UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GILLES BRANSBOURG, Individually and :
on Behalf of All Others Similarly Situated, :
                                                        Plaintiff, :
                                                                : Civil Action No.: 1:08-cv-05054 (RWS)
              v. :
THE BEAR STEARNS COMPANIES INC., :
JAMES E. CAYNE, ALAN D. SCHWARTZ, :
WARREN J. SPECTOR, SAMUEL L. :
MOLINARO, JR. and ALAN C. GREENBERG, :
                                                    Defendants. :
------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF
## GILLES BRANSBOURG FOR APPOINTMENT AS LEAD PLAINTIFF
## AND APPROVAL OF COUNSEL AS LEAD COUNSEL FOR THE CLASS

Gilles Bransbourg ("Bransbourg") submits this memorandum of law in support of his motion for: (i) appointment as Lead Plaintiff pursuant to section 21D(a)(3)(B) of the Securities Exchange Act of 1934 (the "1934 Act"), 15 U.S.C. § 78u-4(a)(3)(B), as amended by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"); and (ii) appointment of Wolf Haldenstein Adler Freeman & Herz LLP as Lead Counsel.

### PRELIMINARY STATEMENT

This is a securities class action brought against The Bear Stearns Companies Inc. ("Bear Stearns" or the "Company") and certain of its officers and directors for violations of the 1934 Act. It is brought on behalf of a class (the "Class") consisting of all current and former employees of Bear Stearns, other than Defendants, compensated, in part, by Restricted Stock Units ("RSUs") and/or capital accumulation plan units ("CAP Units") in connection with their participation in the Company's equity compensation plans (known as the Restricted Stock Unit

Plan (the "RSU Plan") and Capital Accumulation Plan (the "CAP Plan")), and whose rights thereunder were vested thus providing them with a present entitlement to be paid and/or credited an equivalent number of shares of Bear Stearns' common stock ("Bear Stearns Stock" or "Company Stock") at the end of a specified deferral period. Pursuant to the plans, the RSUs and CAP Units constituted non-cash compensation to retain the services of both key employees and executives of the Company. During the between December 14, 2006 and March 14, 2008 (the "Class Period"), Defendants disseminated materially false and misleading statements and press releases concerning the Company's financial condition, business and prospects, concealing its liquidity crisis. Defendants' false and misleading artificially inflated the price of Bear Stearns Stock and caused substantial damages to the participants in the RSU Plan and the CAP Plan, among others.

During the Class Period, Bransbourg, a former Senior Managing Director of Bears Stearns, held 2312 fully vested CAP Units. Thus, Bransbourg possesses a substantial financial interest in the outcome of the case for the Class and is otherwise the most adequate Lead Plaintiff. He further satisfies the requirements of the PSLRA and Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class. Bransbourg is willing to serve as a Lead Plaintiff on behalf of the Class and work closely with his selected counsel Wolf Haldenstein Adler Freeman & Herz LLP during the prosecution of this litigation.

Accordingly, Bransbourg's application for an order appointing him Lead Plaintiff and approving his selected counsel as Lead Counsel for the Class should be granted.

## BACKGROUND TO THE ACTION

Bear Stearns is a holding company that, through its broker-dealer and international bank subsidiaries, provides investment banking, securities and derivatives trading, clearance and brokerage services worldwide. The Company operates through three segments: Capital Markets, Global Clearing Services and Wealth Management. Bear Stearns Stock traded on the New York Stock Exchange ("NYSE") under the symbol "BSC".

Throughout the Class Period, Defendants issued numerous positive, but false or misleading press releases, statements and financial reports filed with the SEC that purported to describe Bear Stearns' financial performance and results. These statements were materially false and misleading and, as a result, Bear Stearns stock traded at artificially inflated prices during the Class Period, reaching a high of $171.51 per share in January 2007.

All the while, the Company proudly promoted a culture of circled wagons – an us against them camaraderie ingrained in the belief that Bear Stearns employees' success was not based on their birthright or pedigree, but a superior work ethic. As part of the effort to unify the employees and mold a particular culture, the Company paid a significant portion of its employees' compensation in Company Stock. Some estimates indicate that nearly one-third of Bear Stearns was employee owned (as of March 17, 2008). These very employees suffered at least a $5 billion loss over the last year as the Company's stock price plunged and then JP Morgan Chase & Co. acquired Bear Stearns at the rock bottom price of $10 per share.

Following the wake of the collapse, numerous securities class actions were filed in the Southern District of New York. Notably, *all* of these initial actions were brought by open market

purchasers of Bear Stearns Stock.[1] The *first* and *only* action brought on behalf of the Class, however, was filed on June 2, 2008. Pursuant to the requirements of the PSLRA, on June 20, 2008, notice of this action was published over a nationally recognized newswire advising the Class that a former employee of Bear Stearns initiated a lawsuit against the Company and certain of its officers and directors. *See* Exhibit 1 (Notice of Pendency) to the August 19, 2008 Declaration of Gregory M. Nespole ("Nespole Decl.").

Accordingly, Bransbourg now moves to satisfy the statutory deadline to be appointed Lead Plaintiff in this action and for his selected counsel to be appointed as Lead Counsel.

## ARGUMENT

### I. BRANSBOURG SHOULD BE APPOINTED LEAD PLAINTIFF

The PSLRA sets forth that a court "shall appoint as lead plaintiff the member or members of the purported class the court determines to be most capable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(i). Moreover, the putative lead plaintiff must demonstrate that he "has the largest financial interest in the relief sought by the class; and otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). *See, e.g., Goldberger v. PXRE Group, Inc.*, No. 06-CV-3410, 2007 WL 980417, at *2 (S.D.N.Y. Mar. 30, 2007).

Bransbourg respectfully submits that he should be appointed Lead Plaintiff because he is most capable of adequately representing the interests of the class members.

---

[1] On July 8, 2008, the State of Michigan Retirement Systems ("SMRS") moved to consolidate this action with common stock purchaser actions styled as *Eastside Holdings Inc. v. The Bear Stearns Companies Inc., et al.*, No. 08-cv-2793, *Becher v. The Bear Stearns Companies Inc., et al.*, No. 08-cv-2866, *Greek Orthodox Archdiocese Foundation v. The Bear Stearns Companies Inc., et al.*, No. 08-cv-3013 and *Schwartz v. The Bear Stearns Companies Inc., et al.*, No. 08-cv-4972. The motion for consolidation and opposition thereto was submitted on July 25, 2008.

### A. Movant Satisfies the Statutory Requirements of the PSLRA

#### 1. Bransbourg Has Timely Moved

The PSLRA mandates that the plaintiff who files the initial action must issue a notice to the class within 20 days of filing the action advising potential class members of the pendency of the lawsuit, the purported class period and their right to seek appointment as lead plaintiff within 60 days of the notice. *See* 15 U.S.C. § 78u-4(a)(3)(A); *Fishbury, Ltd. v. Connetics Corp.*, No. 06 Civ. 11496, 2006 WL 3711566, at *2 (S.D.N.Y. Dec. 14, 2006); *In re Olsten Sec. Litig.*, 3 F. Supp. 2d 286, 295 (E.D.N.Y. 1998). This action was commenced on June 2, 2008. On June 20, 2008, the requisite notice of pendency was published on *Business Wire* setting forth that Lead Plaintiff applications are to be made to the Court on or before August 19, 2008. *See* Nespole Decl., Exhibit 1. This constitutes legally sufficient notice under the PSLRA. *Fishbury, Ltd.*, 2006 WL 3711566, at *2, *citing Bassin v. deCODE Genetics, Inc.*, 230 F.R.D. 313, 314 (S.D.N.Y. 2005). Moreover, the herein application was filed with the Court within the prescribed period after publication of the notice.

Therefore, Bransbourg has timely moved for Lead Plaintiff.

#### 2. Bransbourg Believes He Possess the Largest Financial Interest of Any Putative Class Member

The PSLRA also sets forth that the Court shall adopt a presumption that the most adequate plaintiff in any private action arising thereunder is the person that, *inter alia*, "has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Although the PSLRA does not explain how to determine the largest financial interest, courts generally refer to the following four factors: (1) the number of shares purchased during the class period; (2) the number of net shares purchased during the class period; (3) the total net funds

expended during the class period; and (4) the approximate losses suffered." *In re Pub. Offering Sec. Litig.,* 214 F.R.D. 117, 121 (S.D.N.Y. 2002); *In re Olsten Sec. Litig.,* 3 F. Supp. 2d at 295.

These factors, however, are not entirely amenable to the analysis here of who possesses the largest financial interest in the Class because this action does not seek relief on behalf of open market purchasers of Bear Stearns Stock. The most adequate plaintiff here is not immediately determined by looking at the amount of shares *purchased*, funds expended therefor or losses suffered as a consequence thereof. As explained above, the Class is comprised of current and former employees of Bear Stearns that were participants in the Company's equity compensation plans. The members of the Class *received* equity interests in the Company through restricted stock issuances of RSUs and/or CAP Units, in lieu of cash compensation. The Class is circumscribed to RSU Plan and CAP Plan participants whose rights with respect to their RSUs and/or CAP Units were vested during the Class Period, thus providing them with a present entitlement to be paid and/or credited an equivalent number of shares of Bear Stearns Stock at the end of a specified deferral period.

During the Class Period, as evidenced by the certification annexed to the complaint, Bransbourg received 2312 vested CAP Units entitling him to be credited an equivalent number of shares of Bear Stearns Stock at the end of a deferral period. *See* Nespole Decl., Exhibit 2 (Certification). Bransbourg received these CAP Units on November 1, 2008. On that date, Bear Stearns Stock traded as high as $111.22 per share, and closed at $107.94 per share. As a result of market corrections caused by public disclosure of Bear Stearns' misconduct, on March 16, J.P. Morgan Chase & Co. ("J.P. Morgan") announced its agreement to purchase Bear Stearns for $2.00 per share. J.P. Morgan subsequently announced its agreement to purchase Bear Stearns had been increased to $10.00 per share. The losses suffered by Bransbourg, however, are

difficult to calculate because his vested CAP Units have not settled and, thus remain inalienable. Bransbourg nonetheless believes he has the largest financial interest of any member of the Class currently before the Court and has not received notice that any other applicant has sustained greater financial losses in connection with their receipt of vested RSUs and/or CAP Units.

Accordingly, Bransbourg believes that he has the largest financial interest of any qualified Movant seeking appointment as Lead Plaintiff.

### 3. Bransbourg Otherwise Satisfies the Requirements of Rule 23

The PSLRA further sets forth that, in addition to possessing the largest financial interest in the outcome of the litigation, the most adequate plaintiff is the person that, *inter alia* the lead plaintiff must also "otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii). Rule 23(a) provides that a party may serve as a class representative only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23. Of these four prerequisites, only two – typicality and adequacy – directly address the personal characteristics of the class representative. Thus, on a Lead Plaintiff motion, the applicant "need only make a preliminary showing that it satisfies the typicality and adequacy requirements of Rule 23." *Glauser v. EVCI Ctr. Colleges Holding Corp.*, 236 F.R.D. 184, 188 (S.D.N.Y. 2006), *quoting In re Olsten Sec. Litig.*, 3 F. Supp 2d at 296.

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. Typicality exists if claims "arise from the same course of conduct that gives rise to the claims of the other class members, where the claims are based on the same legal

theory, and where the class members and Lead Plaintiff were injured by the same conduct." *Glauser*, 236 F.R.D. at 188-89, *citing Dietrich v. Bauer*, 192 F.R.D. 119, 124 (S.D.N.Y. 2000). *See In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. 512, 516 (S.D.N.Y. 2002) (Typicality established where "the claims of representative Plaintiffs arise from the same course of conduct that gives rise to the claims of the other Class members, where the claims are based on the same legal theory, and where the class members have allegedly been injured by the same course of conduct as that which allegedly injured the proposed representative"). "Even if minor distinctions exist, the typicality requirement will be met." *In re Olsten Sec. Litig.*, 3 F. Supp 2d at 296. Indeed, "the typicality requirement may be satisfied even if there are factual dissimilarities or variations between the claims of the named plaintiffs and those of other class members, including distinctions in the qualifications of the class members. *Bishop v. New York City Dep't of Hous. Pres. and Dev.*, 141 F.R.D. 229, 238 (S.D.N.Y. 1992). *See In re Sumitomo Copper Litigation*, 182 F.R.D. 85, 92 (S.D.N.Y. 1998) (Noting that "[i]t is well settled in this Circuit that factual differences in the amount of damages, date, size or manner of purchase, the type of purchaser, the presence of both purchasers and sellers, and other such concerns will not defeat class action certification when plaintiffs allege that the same unlawful course of conduct affected all members of the proposed class"). The adequacy requirement is "satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that he seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class that he seeks to represent." *Glauser*, 236 F.R.D. at 189. Bransbourg satisfies both the typicality and adequacy requirements of Rule 23.

Bransbourg satisfies the typicality requirement because his claims in this action arise from the very same course of misconduct as the claims of the other members of the putative

Class; that they received, as participants in the RSU Plan and the CAP Plan, Bear Stearns Stock at artificially inflated prices as a consequence of Defendants' fraudulent public disclosures, and suffered damages thereby. Thus, Bransbourg has established typicality. *See Id.* at 188-89; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. at 516.

Bransbourg also satisfies the adequacy requirement because his interests are clearly aligned with the members of the Class, and not antagonistic. Moreover, there are no facts to suggest any actual or potential conflicts or antagonism between the interests of Bransbourg and the Class. Additionally, Bransbourg's proposed Lead Counsel is highly qualified, experienced and able to conduct this complex litigation in a professional manner. Thus, Bransbourg has also established adequacy. *Glauser*, 236 F.R.D. at 189; *In re Livent, Inc. Noteholders Sec. Litig.*, 210 F.R.D. at 517.

Bransbourg, therefore, should be appointed as Lead Plaintiff.

## II. THE COURT SHOULD APPROVE BRANSBOURG'S SELECTION OF LEAD COUNSEL

The PSLRA additionally provides that the "most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class. 15 U.S.C. § 78u-4(a)(3)(B)(v). Bransbourg has selected and retained Wolf Haldenstein Adler Freeman & Herz LLP ("Wolf Haldenstein") to serve as Lead Counsel for the Class.

Wolf Haldenstein has extensive experience in successfully prosecuting complex securities actions and has frequently appeared in major actions in this and other courts. *See* Nespole Decl., Exhibit 3 (Wolf Haldenstein Resume). Accordingly, the Court should approve Wolf Haldenstein as Lead Counsel for the Class.

## CONCLUSION

For the foregoing reasons, Bransbourg respectfully requests that the Court: (i) appoint Bransbourg as Lead Plaintiff; and (ii) approve his selection of Wolf Haldenstein as Lead Counsel for the Class.

Dated: New York, New York
August 19, 2008

                          WOLF HALDENSTEIN ADLER
                          FREEMAN & HERZ LLP

By: _____
Daniel W. Krasner (DK 6381)
Gregory M. Nespole (GN 6820)
Malcolm T. Brown (MB 3272)
270 Madison Avenue
New York, New York 10016
(212) 545-4600

*Attorneys for Gilles Bransbourg and*
*Proposed Lead Counsel for the Class*

/518343